# United States Court of Appeals

## For the First Circuit

No. 11-2243

UNITED STATES OF AMERICA,

Appellee,

v.

VICTOR FLORES-MACHICOTE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

Hector L. Ramos-Vega, Assistant Federal Public Defender, Supervisor, Appeals Division, with whom Hector E. Guzman, Jr., Federal Public Defender, and Patricia A. Garrity, Assistant Federal Public Defender, were on brief, for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, and Julia M. Meconiates, Assistant United States Attorney, were on brief, for appellee.

January 23, 2013

_____

    * Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SELYA, Circuit Judge.** After defendant-appellant Victor Flores-Machicote entered a guilty plea, the district court sentenced him to five years in prison — a sentence well above the top of the applicable guideline sentencing range (GSR). The defendant appeals, asserting that the district court did not make an individualized assessment of the relevant sentencing factors but, rather, relied on impermissible considerations (including the perceived shortcomings of the local courts and the epidemic of violent street crime that has plagued Puerto Rico in recent times). After careful consideration, we reject the defendant's assertions and affirm the sentence.

The background facts are uncomplicated. A federal grand jury sitting in the District of Puerto Rico indicted the defendant on a single count of possessing a firearm as a convicted felon. See 18 U.S.C. §§ 922(g)(1), 924(a)(2). The charge carries a maximum term of imprisonment of ten years. See id. § 924(a)(2). The defendant pleaded guilty, and the probation department prepared a presentence investigation report (the PSI Report) that recommended a GSR of 33 - 41 months.

At the disposition hearing, the parties — pursuant to a nonbinding plea agreement — jointly recommended a 33-month sentence. The district court abjured this joint recommendation, saying that such a sentence would be "irresponsible." The court instead imposed a five-year incarcerative term.

This timely appeal ensued. In it, the defendant does not contest the guidelines calculations contained in the PSI Report. Nevertheless, he challenges his sentence as both procedurally flawed and substantively unreasonable. Furthermore, he seeks to be resentenced before a different judge.

We review criminal sentences imposed under the advisory guidelines regime for abuse of discretion. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). Within this rubric, we assay the district court's factfinding for clear error and afford de novo consideration to its interpretation and application of the sentencing guidelines. See United States v. Walker, 665 F.3d 212, 232 (1st Cir. 2011).

The defendant's core contention is that the district judge failed to make an individualized assessment of the relevant sentencing factors but, rather, relied mainly on impermissible considerations. In support, the defendant draws our attention to certain statements made by the judge. For the most part, these statements track two themes. The first theme is composed of the judge's references to matters such as the perceived shortcomings of the local criminal justice system and the need to compensate for those shortcomings. The second theme is composed of the judge's references to Puerto Rico's murder rate and other negative societal factors. The defendant asseverates that the judge's espousal of

these themes resulted in a failure to treat him as an individual and fostered unwarranted sentencing disparity. These bevues, in turn, led directly to the imposition of a higher than reasonable sentence.

In the sentencing context, we evaluate claims of unreasonableness in light of the totality of the circumstances. Gall, 552 U.S. at 51. This path typically involves a two-step pavane. First, we inquire into the existence of procedural errors "such as failing to calculate (or improperly calculating) the [GSR], treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." Id. Once we are assured that the sentence is not infected by procedural error, we then proceed to evaluate its substantive reasonableness. Id.

Appellate review of federal criminal sentences is characterized by a frank recognition of the substantial discretion vested in a sentencing court. Although the advisory guidelines are "the starting point and the initial benchmark," id. at 49, a sentencing judge may draw upon his familiarity with a case, weigh the factors enumerated in 18 U.S.C. § 3553(a), and custom-tailor an appropriate sentence, see Kimbrough v. United States, 552 U.S. 85, 109 (2007). It follows that a "sentencing court may not

mechanically assume that the GSR frames the boundaries of a reasonable sentence in every case." Martin, 520 F.3d at 91. Rather, the court must take a flexible, case-by-case approach: once the GSR is properly calculated, "sentencing becomes a judgment call" involving an intricate array of factors. Id. at 92. Consequently, punishment outside the GSR may be warranted in a particular case "to serve the objectives of sentencing." Kimbrough, 552 U.S. at 91.

When a court varies from the GSR, its reasons for doing so "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." Martin, 520 F.3d at 91. In such a situation, the factors deemed relevant by the sentencing court "must add up to a plausible rationale" for the sentence imposed and "must justify a variance of the magnitude in question." Id.

Against this backdrop, we turn to the defendant's assignments of error. We begin with the argument that the district judge, in fashioning the defendant's sentence, improperly considered shortcomings in Puerto Rico's local justice system — including its past treatment of the defendant.

By statute, a criminal defendant's "history and characteristics" are among the considerations that a court ought to take into account at sentencing. 18 U.S.C. § 3553(a)(1). As part of this inquiry, a sentencing judge may consider whether a

defendant's criminal history score substantially underrepresents the gravity of his past conduct. United States v. Lozada-Aponte, 689 F.3d 791, 792 (1st Cir. 2012); Walker, 665 F.3d at 233-34; see USSG §4A1.3(a)(1). A record of past arrests or dismissed charges may indicate "a pattern of unlawful behavior even in the absence of any convictions." Lozada-Aponte, 689 F.3d at 792 (quoting United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006)) (internal quotation marks omitted); see United States v. Gallardo-Ortiz, 666 F.3d 808, 814-15 (1st Cir. 2012). Logic dictates that a sentencing court may similarly consider whether, in a series of past convictions, the punishment appears to fit the crime. If the court concludes that an asymmetry exists which results in a substantial underestimation of the defendant's criminal history, it may vary the sentence upward to reflect past leniency.[1] See United States v. Moore, 239 F. App'x 509, 512 (11th Cir. 2007) (per curiam); see also USSG §4A1.3, comment. (backg'd.).

It is true that, in the case at hand, the sentencing judge commented disapprovingly about what he perceived to be the habitual leniency of the local courts. Seen in a vacuum, this perceived systemic shortcoming is not, in and of itself, a relevant

---

[1] Our decision in United States v. Santiago-Rivera, 594 F.3d 82 (1st Cir. 2010), is not to the contrary. There, we held only that a district judge may not "select[] a sentence for the sole purpose of controlling the running of an unrelated local sentence." Id. at 86. The defendant in this case does not claim that the district judge attempted to control the running of an unrelated local sentence.

sentencing factor.  Importantly, however, the judge did not stop there: he went to considerable lengths to walk through the defendant's prior interactions with the law.  The judge explained, in some detail, why he believed that the outcome of these interactions underrepresented the seriousness of the defendant's past criminal conduct.  Specifically, he noted that the defendant's felony conviction for simple possession of heroin and cocaine had been reduced from a charge of possession with intent to distribute; three other arrests for controlled substance violations had resulted in no punishment at all; and a prior conviction for illegal appropriation of a vehicle had resulted in only a six-month suspended sentence.  In light of the conduct in which the defendant had engaged and how he fared before the local courts, we think that the district judge had some basis for referring to the earlier sentences as "slap[s] on the wrist."[2]  We also think that the judge reasonably could have concluded that one of the defendant's past arrests for distribution of controlled substances likely "[fell] through the cracks" when the local court found no probable cause to proceed with the underlying charge.  Having reached these conclusions, it was within the district judge's discretion to find that the defendant's criminal history score did not adequately

---

[2] This was relevant because, the district judge observed, "had some Judge in the past been stronger with [the defendant] at the beginning, perhaps he would not be here today."

represent either the seriousness of his past criminal behavior or the likelihood of his recidivism.

We add, moreover, that the district judge's focus on the defendant's criminal history belies the claim that the judge did not consider the defendant's case. That focus unmistakably shows that the judge gave individualized attention to the defendant's situation. See Gall, 552 U.S. at 50, 52.

The defendant's next argument is that the district judge considered Puerto Rico's escalating murder rate and other local criminal trends and that this consideration was improper. The factual premise upon which this argument rests is solid; the record is pellucid that the judge commented repeatedly upon these points. Some examples follow.

- "What do you think that this gun that [the defendant] had illegally was to be used for? Was it to go to church and pray with or was it to kill people? What do you think these guns are for?"

- "When you have a society like Puerto Rican society, with over 800 murders — we are reaching 900 already — where there are shootouts in the streets every day, killings car to car, where killings and beheadings are taking place in this island, I cannot look at an individual like this and not consider the social problem we have in the streets that's creating an ambiance where you cannot live in peace as a citizen."

- " . . . 84 percent of all murders in Puerto Rico occur with the use of firearms."

- "I think Puerto Rico [shouldn't] tolerate one more gun."

-8-

- "It's an embarrassment. I feel embarrassed to think we have the highest murder statistics in the whole United States."

- "We read it in the paper every day. People get killed in the middle of the street, shootings from car to car, all kinds of horrible, gun-related crimes happening. . . . [S]tatistics depict a picture of Puerto Rico that pretty soon people are not going to even want to come here to visit as tourists."

Along somewhat the same lines, the district judge characterized the defendant's possession of a high-caliber weapon with a large-capacity magazine as "part of the problem" and declared "[t]hat's why we leave in the morning and we don't know whether we're going to come back alive in the afternoon."

Even though the judge's comments contain some unnecessary rhetorical flourishes, the defendant paints with too broad a brush in claiming that they went beyond the pale. After all, a sentencing judge may consider community-based and geographic factors. See Lozada-Aponte, 689 F.3d at 793 (noting in dictum that sentencing judge's discussion of "incidence of crime in Puerto Rico" was a "permissible [sentencing] consideration[]"); United States v. Politano, 522 F.3d 69, 74 (1st Cir. 2008) (allowing sentencing court "to take into account all of the circumstances under which [the defendant] committed the offense, including the particular community in which the offense arose"); see also United States v. Cavera, 550 F.3d 180, 184 (2d Cir. 2008) (en banc) (affirming imposition of upward variance on ground that GSR "failed

to take into account the need to punish more severely those who illegally transport guns into areas like New York City"). Within this taxonomy, it is permissible for a sentencing court to consider the incidence and trend lines of particular types of crime in the affected community. See United States v. Landry, 631 F.3d 597, 607 (1st Cir. 2011).

This makes good sense. Deterrence is widely recognized as an important factor in the sentencing calculus. See, e.g., 18 U.S.C. § 3553(a)(2)(B). Community-based considerations are inextricably intertwined with deterrence, which aims to "prevent[] criminal behavior by the population at large and, therefore, incorporates some consideration of persons beyond the defendant." Politano, 522 F.3d at 74. Put another way, the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence.

To illustrate, if a community is relatively free of violent crime, a sentencing judge reasonably may deem a violent crime aberrational and, thus, see no need for a heightened level of deterrence. If, however, violent crime is running rampant, the judge reasonably may conclude that the need for deterrence is great — and this may translate into a stiffer sentence.

The defendant tacitly acknowledges this framework, but insists that the district judge gave undue weight to the need for deterrence. This plaint overlooks, however, that the section

3553(a) factors must be assessed in case-specific terms. There is no pat formula dictating how these factors interrelate. A sentencing court has broad discretion to assay them and need not afford equal weight to each factor in a given case. See United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010); United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006). In this instance, we believe that the assignment of appreciable weight to the need for deterrence was adequately explained and, in the end, a reasonable choice.

The judge discussed the need to promote respect for the law, explaining that Puerto Rico is "a jurisdiction where violent crime and gun related crime [are] so prevalent that it gets . . . embarrassing." In acknowledging the need "to afford adequate deterrence to criminal conduct," the judge stated:

> The word has to spread that this Court is going to be extremely harsh with defendants who conduct and carry out gun-related crimes. Recently there was an announcement by the Federal government that there are — they have reached into a stipulation with the local government whereby they are going to start filing all the gun cases in this Court. Simple reason for that, local courts are incapable of managing them. And that's exactly what's going on.

Sentencing judges are not automatons, and a judge is entitled to view certain types of crime as particularly heinous. See, e.g., Walker, 665 F.3d at 233. Reviewing the sentencing record as a whole, we find that it was within the discretion of the court below

to place special emphasis on the deterrence factor and to explain that emphasis in the context of local trends.

This is not to say that a sentencing court's emphasis on factors that are not specifically tied to either the offender or the offense of conviction — say, the perceived shortcomings of local courts or the incidence of particular crimes in a given locale — may not go too far. A sentencing judge's resort to community-based characteristics does not relieve him or her of the obligation to ground sentencing determinations in case-specific factors. See Politano, 522 F.3d at 74. It is possible for a sentencing judge to focus too much on the community and too little on the individual and, thus, impose a sentence that cannot withstand the test of procedural reasonableness.

Here, however, the sentencing judge did not cross this line. He directed individualized attention to the defendant's case, explicitly discussing the section 3553(a) factors as they related to the defendant. He addressed the nature and circumstances of the particular offense, its seriousness, and the need to provide condign punishment. He also paid particular heed both to the fact that the defendant's weapon was "a nine millimeter, semi-automatic pistol with a high capacity magazine," and to the defendant's likely recidivism. While the judge may have lingered longer than necessary on community characteristics, the

claim that he did not give individualized attention to the sentencing determination is unfounded.

The defendant's claim of procedural unreasonableness has one further dimension. He asserts that his sentence reflects the judge's failure to avoid unwarranted sentencing disparity. See 18 U.S.C. § 3553(a)(6). To begin, this argument was not advanced in the district court. It is, therefore, forfeited, and our review is for plain error. United States v. Matos, 328 F.3d 34, 43 (1st Cir. 2003). In all events, we see no error, plain or otherwise.

This assertion is premised on an ad hoc statistical analysis, through which the defendant strives to convince us that the sentencing judge routinely imposes uniquely harsh sentences. We are not persuaded.

Defense counsel examined 25 cases prosecuted in the District of Puerto Rico in 2010-2011. Based on this examination, the defendant suggests that his above-the-range sentence is a product of the sentencing judge's biases rather than permissible sentencing criteria.

Statistical evidence that fails to satisfy minimum standards of reliability proves nothing. Cf. Rathbun v. Autozone, Inc., 361 F.3d 62, 79 (1st Cir. 2004) (explaining, in disparate treatment context, that statistical evidence must "cross a threshold of dependability"). So it is here. In the sampled cases, the defendants were convicted of a variety of weapons

charges. The sample size is unhelpfully small, the analytic methodology is quixotic, and the cases examined are not fair congeners. The defendants within the cohort assembled by defense counsel faced diverse charges, had varying offense levels, exhibited differing offense characteristics, and had dissimilar criminal histories. Any disparities in sentencing outcomes may rationally be attributed to, say, differences in criminal history, the presence or absence of cooperation, or a myriad of other factors. See, e.g., United States v. Saez, 444 F.3d 15, 18 (1st Cir. 2006); United States v. Washington, 187 F. App'x 3, 5 (1st Cir. 2006) (per curiam). The defendant's statistical proffer accounts for none of these factors.

Comparing apples to oranges is not a process calculated to lead to a well-reasoned result. Because its foundation is porous, the defendant's claim of unwarranted sentencing disparity fails.

Having determined that the claims of procedural error are untenable, we are ready for the second step of the pavane: the defendant's complaint that his five-year sentence is substantively unreasonable.

In any given case, there is "a range of reasonable sentences." Martin, 520 F.3d at 92. A sentence is not substantively unreasonable merely because the reviewing court would have sentenced the defendant differently. Id. "[T]he linchpin of

a reasonable sentence is a plausible sentencing rationale and a defensible result." Id. at 96.

Here, the district judge's sentencing calculus centered on the seriousness of the defendant's criminal conduct, the defendant's past history and likelihood of recidivism, and the need for deterrence. This constituted a plausible rationale (albeit not one to the defendant's liking). The lens of our inquiry narrows, therefore, to the length of the sentence imposed.

In this regard, the defendant laments the fact that his sentence is well above the top of the GSR. Where, as here, the district court imposes a sentence outside the GSR, a reviewing court must consider the extent of the variance. See Gall, 552 U.S. at 51. But even a substantial variance does not translate, ipso facto, into a finding that the sentence is substantively unreasonable. See Gallardo-Ortiz, 666 F.3d at 811. Everything depends on context.

In this case, the upward variance is admittedly steep. Nevertheless, the offense conduct involved the possession of an extremely dangerous weapon, previously stolen in a home invasion. The defendant's criminal history is not insubstantial, and the prospect of recidivism is real. He has had the benefit of fortuitous procedural outcomes and gentle dispositions in past interactions with the legal system, but he apparently learned no lessons. Under these circumstances, we cannot say that a five-year

sentence — one half of the statutory maximum for the offense of conviction — is substantively unreasonable.

We need go no further.[3]  For the reasons elucidated above, we uphold the defendant's sentence.

**Affirmed**.

---

[3] Because we have rejected the defendant's appeal on the merits, we need not consider his prayer that he be resentenced before a different judge.