**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 15-1190

UNITED STATES OF AMERICA,

Appellee,

v.

OSCAR FIGUEROA-QUIÑONES,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

Before

Howard, Chief Judge,
Torruella and Thompson, Circuit Judges.

---

Eric Alexander Vos, Federal Public Defender, District of Puerto Rico, Vivianne M. Marrero, Assistant Federal Public Defender, Supervisor, Appeals Section, and Liza L. Rosado-Rodriguez, Research and Writing Specialist, on brief for appellant.

Rosa Emilia Rodríguez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Julia M. Meconiates, Assistant United States Attorney, on brief for appellee.

---

October 31, 2016

---

**THOMPSON**, **Circuit Judge**.   Defendant-Appellant Oscar Figueroa-Quiñones ("Figueroa") challenges the 72-month sentence imposed upon him on both procedural and substantive reasonableness grounds.

The facts underlying this case are, for the most part, uncontested.[1]   On February 21, 2014, Homeland Security received information from a confidential informant regarding an illegal marijuana growth laboratory inside a residence in Guaynabo, Puerto Rico.   After Homeland Security agents, accompanied by Puerto Rico police officers, went to the residence and announced themselves, they made a warrantless entry after hearing suspicious noises -- a toilet flushing and the unloading of a gun -- sounds they thought to be the destruction of evidence.   Agents immediately located and detained Figueroa and two others.   During a quick scan of the premises, the officers observed a gun on top of a microwave, live marijuana plants, and large quantities of loose marijuana.

After reading Figueroa his Miranda rights, officers proceeded to interview him on site.   At first he denied any connection to the residence, but eventually admitted it was his home. During the questioning, Figueroa initially gave the officers

---

[1] This sentencing appeal follows a guilty plea, and we therefore "glean the relevant facts from the change-of-plea colloquy, the unchallenged portions of the presentence investigation report (PSI Report), and the record of the disposition hearing." United States v. Vargas, 560 F.3d 45, 47 (1st Cir. 2009).

verbal consent to search his vehicle, leading to the discovery of firearm magazines. Later, he consented to a search of the residence,[2] which resulted in the seizure of over 50 marijuana plants; a large amount of unpackaged marijuana; drug growing and packaging paraphernalia; and a variety of artillery, including an unloaded AK-47 assault rifle, two AK-47 assault rifle magazines, and a loaded Glock pistol.

After his arrest and after waiving his Miranda rights for a second time, Figueroa confessed to Homeland Security agents to being the owner of the munitions and the operator of the growth laboratory. Then several days later, a federal grand jury sitting in the District of Puerto Rico returned a two-count indictment, charging Figueroa with possession with intent to distribute controlled substances and possession of a firearm in furtherance of a drug-trafficking crime.

On the heels of the indictment came Figueroa's motion to dismiss and motion to suppress the evidence gathered during the warrantless search. The district court denied the motion to dismiss. As for the suppression motion, after conducting an evidentiary hearing, a magistrate judge recommended that the motion be granted. Following the government's objection to the

_____

[2] Officers explained that a warrant could be obtained for his residence, but Figueroa stated (according to an agent) that "he would rather get the search 'over with,' and he signed the consent to search form."

- 3 -

magistrate judge's report and recommendation, a de novo hearing was scheduled before the district court; however, the merits were never addressed because the parties reached a preliminary plea agreement.

The agreement, which called for Figueroa to plead guilty to possession of a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(a), proposed, inter alia, a sentence of 60 months' imprisonment, the statutory minimum.

Subsequent to the plea entry, the probation department prepared a presentence investigation report ("PSI report") recommending the same sentence as the plea agreement. Thereafter, Figueroa filed a sentencing memorandum highlighting his cooperation with the government and characterizing his unlawful activity as being the result of his mistakes. Letters from Figueroa's family and friends, vouching for his character, accompanied the memorandum.

On January 13, 2015, sentencing day, the court reviewed the PSI report and acknowledged receipt of the sentencing memorandum. At the court's invitation, Figueroa offered an allocution, expressing repentance and remorse, and reiterating some of the positive aspects of his sentencing memorandum. Counsel for Figueroa and the government stood by the 60-month term prison recommendation in the plea agreement.

When all had been heard from, the district court

proceeded with its sentencing task. First, the court properly calculated the applicable guideline sentencing range. Then, after reviewing the PSI report -- and finding it satisfactory -- the court went on to describe some of Figueroa's personal characteristics: his age - 32; education - high school graduate; employment history - unemployed on date of sentencing; and personal drug use. It also acknowledged that Figueroa was a first-time offender, notwithstanding a previously dismissed criminal case against him, and expressly indicated it had considered the sentencing factors set forth in 18 U.S.C. § 3553(a). The court spoke of the firearms seized and the impressive volume of marijuana grown and harvested by the defendant. The court then turned its attention to the high firearms and violent crime rate in Puerto Rico, and noted the importance of deterrence. Concluding that the recommended 60-month sentence did not reflect the seriousness of the offense, serve the end of deterrence, or promote respect of the law, the court sentenced Figueroa to 72 months in prison and 5 years of supervised release.

Following the court's explication, counsel for Figueroa objected to the heightened sentence and requested a "reconsideration," arguing that the sentence was both procedurally and substantively unreasonable. The court denied that request.

Figueroa now appeals, and, as below, he challenges both the procedural and substantive reasonableness of his sentence.

- 5 -

For the reasons set forth herein, we affirm.[3]

## Our Review

Reviewing this challenged sentence requires a two-step process.  United States v. King, 741 F.3d 305, 307 (1st Cir. 2014) (citing Gall v. United States, 552 U.S. 38, 51 (2007)).  First, we resolve claims of procedural error (e.g., failing to consider the § 3553(a) factors or failing to adequately explain the sentence) before inquiring into whether the sentence is substantively reasonable.  Id. at 308; United States v. Morales-Machuca, 546 F.3d 13, 25 (1st Cir. 2008).  We review preserved claims of procedural and substantive unreasonableness for abuse of discretion.  United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013); United States v. Medina-Villegas, 700 F.3d 580, 583 (1st Cir. 2012).

## Procedural Reasonableness

Figueroa complains that the court did not correctly assess the § 3553(a) factors: as he sees it, the court focused too little on the positive aspects of his case (his first-time offender status, the glowing character letters sent by family and friends,

---

[3] Although the plea agreement included a waiver-of-appeal provision, that provision took effect only if Figueroa was sentenced in accordance with the agreement's "terms, conditions, and recommendations."  Because the court fashioned a sentence different from that which was proposed, this waiver-of-appeal provision does not prevent us from considering Figueroa's appeal. See United States v. Fernández-Cabrera, 625 F.3d 48, 51 (1st Cir. 2010).

and his cooperation with the government) and fixated too intensely

on the negative (the seriousness of the offense, the crime rate in

Puerto Rico, and deterrence and punishment considerations).[4] Given

our standard of review, we cannot agree.

---

[4] Section 3553(a) provides seven factors for a sentencing court to consider:

The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:

"the need for the sentence imposed—

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

"(B) to afford adequate deterrence to criminal conduct;

"(C) to protect the public from further crimes of the defendant; and

"(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

§ 3553(a)(2).

The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victims," § 3553(a)(7). Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second

As for the positives, the court explicitly stated that it had considered all of the § 3553(a) factors. Such a declaration, as we have repeatedly said, "is entitled to significant weight," <u>see</u> <u>United States</u> v. <u>Santiago-Rivera</u>, 744 F.3d 229, 233 (1st Cir. 2014) (citing <u>United States</u> v. <u>Dávila-González</u>, 595 F.3d 42, 49 (1st Cir. 2010)), and the record offers us no reason to doubt the court. Indeed, the court talked about the positives such as Figueroa's first-time offender status and his cooperation with the government. Moreover, the court went on to make clear that it had reviewed the sentencing memorandum, which described Figueroa's commendable character attributes, and had reviewed as well the many letters of support submitted on his behalf.

As for the negatives cited by the court, our caselaw makes clear that community-based elements and the need for deterrence are "widely recognized" as important ingredients in the sentencing calculus. <u>Flores-Machicote</u>, 706 F.3d at 23. And while we have cautioned that a sentencing court must not focus "too much on the community and too little on the individual" when it doles

factor. § 3553(a) (2000 ed., Supp. V). The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

<u>Gall</u> v. <u>United States</u>, 552 U.S. 38, 50 n.6 (2007).

- 8 -

out a sentence, United States v. Rivera-González, 776 F.3d 45, 50 (1st Cir. 2015) (citations omitted), we cannot say that such an improper balancing occurred in this case. The court's examination of the particulars of Figueroa's case, and its reflections upon the crime rate and gun violence statistics in Puerto Rico, were part and parcel of a wholesale review of the circumstances of this case. Deterrence -- a legitimate sentencing goal, see id. at 50-51 (citing 18 U.S.C. § 3553(a)(2)(B); Flores–Machicote, 706 F.3d at 23) -- and community-based concerns are proper factors in the court's sentencing calculus, and there is no indication that excessive weight was given to either.

Seeking a way around this predicament, Figueroa points out that this crime-rate rationale has no limitations: "If Puerto Rico is plagued by high crime rates at the time a defendant is sentenced, that is reason enough to justify the need for increased punishment and deterrence" -- but, conversely, "if crime rate is down, then the court claims that the 'firearms initiative' is working and thus, tougher sentences are required to ensure it continues to diminish." Figueroa concludes that this argument leaves defendants "doomed in a merciless cycle." This point, while potentially concerning in the abstract, does not trouble us in this case. Figueroa has "waived the argument" by not raising it in his principal brief. United States v. Jones, 748 F.3d 64, 73

(1st Cir. 2014) (citation omitted).[5]  And in any event, as we discuss below, the district court's sentencing determination was not erroneous.

Overall, what we have here then, is an appellant whose "real complaint is not that the court failed to consider the section 3553(a) factors, but that the court did not assign the weight to certain factors that the [appellant] thought appropriate."  See United States v. Ruiz-Huertas, 792 F.3d 223, 227 (1st Cir.), cert. denied, 136 S. Ct. 258 (2015); see also United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011) (explaining that "the weighting of [sentencing] factors is largely within the court's informed discretion").  Here, the court correctly looked at everything presented to it, considered all appropriate sentencing factors, and, in the end and in its substantial discretion, weighed its analysis contrary to Figueroa's preferences.

Moving on to the court's sentencing explanation, it, too, we deem sufficient.  The court's thorough inspection of the

---

[5] Figueroa also seemingly suggests that the court should have taken alleged police misconduct -- warrantless entry and destruction of evidence -- into account in imposing the sentence. And, the argument continues (at least implicitly), had the court done so, he would have gotten a lighter sentence.  But Figueroa did not raise the claim at sentencing, nor does he develop it here, so it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (deeming waived "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation").

case led it to conclude and to parse why the 60-month proposed sentence did not suitably account for the seriousness of the crime, nor sufficiently reflect the imperative notions of just punishment and deterrence. To us, the rationale and explanation offered by the district court are clear, and to the extent any ambiguity can be found, whatever gap there may be in the court's reasoning is filled by "comparing what was argued by the parties or contained in the [PSR] with what the judge did."[6] United States v. Ocasio-Cancel, 727 F.3d 85, 91 (1st Cir. 2013) (quoting United States v. Jiménez-Beltre, 440 F.3d 514, 519 (1st Cir. 2006) (en banc)).

The bottom line is that we see no procedural error in what the court did.

**Substantive Reasonableness**

That leaves Figueroa's substantive-reasonableness claim -- that the court failed to adequately consider the arguments advanced in favor of the recommended sentence and neglected to perform an individualized assessment, instead focusing on the firearms initiative and local murder rate. "There is rarely, if ever, a single correct sentence in any specific case." Santiago-Rivera, 744 F.3d at 234. So, we ask "whether the sentence, in light of the totality of the circumstances, resides within the

---

[6] Although the parties also squabble about the district court's post-sentencing Statement of Reasons, we do not need to weigh in on that document's contents because we determined the explanation given at the sentencing hearing was adequate.

- 11 -

expansive universe of reasonable sentences."  King, 741 F.3d at 308.  A sentence will survive a challenge to its substantive reasonableness as long as it rests on a "plausible sentencing rationale" and reflects a "defensible result."  United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008).  "A challenge directed at substantive reasonableness is usually a heavy lift, and reversal is 'particularly unlikely when . . . the sentence imposed fits within the compass of a properly calculated [guideline sentencing range].'"  Ruiz-Huertas, 792 F.3d at 228-29 (quoting United States v. Vega-Salgado, 769 F.3d 100, 105 (1st Cir. 2014) (omission and alteration in original)).

The statute in play here clearly provides that anyone who possesses a firearm in furtherance of a drug-trafficking crime "shall, in addition to the punishment provided for such . . . drug trafficking crime . . . be sentenced to a term of imprisonment of not less than 5 years."[7]  18 U.S.C. § 924(c)(1)(A)(i).  The 72-month sentence imposed by the court -- 12 months in excess of the recommendation -- is defensible: given the court's focus on the

---

[7] We recently explained that the statutory mandatory minimum sentence applicable in this case (60 months) is the guideline sentence.  See United States v. Bermúdez-Meléndez, 827 F.3d 160, 164 (1st Cir. 2016).  When, as now, "application of the sentencing guidelines yields a singular guideline sentence rather than a guideline sentencing range . . . a sentence in excess of the guideline sentence should be treated as an upward variance."  Id. This matters "because an upwardly variant sentence usually requires a fuller explanation than a guideline sentence."  Id.

large quantity of drugs involved, Figueroa's role in leasing an apartment to renovate into a grow lab, and the guns and ammunition seized, the chosen sentence inescapably "resides within the expansive universe of reasonable sentences." King, 741 F.3d at 308. That the sentence exceeded the recommendation by 12 months does not render it -- by that fact alone -- substantively unreasonable. See, e.g., Flores-Machicote, 706 F.3d at 25; United States v. Vargas, 560 F.3d 45, 51 (1st Cir. 2009). Instead, a court's rationale must be "plausible" and the sentence must fall "within the expansive universe" of acceptable outcomes. King, 741 F.3d at 308 (citation omitted). Here, the court's sentence passes that test.

In sum, the court offered sufficiently persuasive explanations to justify the sentence imposed. Figueroa's conduct was serious, and the deterrence and societal-protective needs are great. We cannot say that the district court's sentencing decision was outside the "expansive universe" of defensible results, and so the sentence stands. See id.

## Conclusion

Our review ends here. For the reasons elucidated above, the sentence is

**Affirmed**.