# United States Court of Appeals
## For the First Circuit

No. 18-2187

UNITED STATES OF AMERICA,

Appellee,

v.

LUCAS HEINDENSTROM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Lynch, Selya, and Barron,
Circuit Judges.

Robert C. Andrews, with whom Robert C. Andrews Esquire P.C. was on brief, for appellant.
Julia M. Lipez, Assistant United States Attorney, with whom Halsey B. Frank, United States Attorney, was on brief, for appellee.

December 30, 2019

**SELYA**, **Circuit Judge**.    Defendant-appellant Lucas Heindenstrom pleaded guilty to a single count charging him with drug distribution in violation of 21 U.S.C. § 841(a)(1).  The district court, relying heavily on a finding that a death resulted from the offense of conviction, imposed an above-the-range term of immurement, justifying the sentence both as an upward departure and an upward variance.  Concluding that the sentence is supportable when viewed as an upward variance, we affirm.

## I. BACKGROUND

We start by rehearsing the relevant facts and travel of the case.  When — as in this case — an appeal trails in the wake of a guilty plea, we normally "draw the facts from the change-of-plea colloquy, the uncontested portions of the presentence investigation report (PSI Report), and the transcript of the disposition hearing."  United States v. Narváez-Soto, 773 F.3d 282, 284 (1st Cir. 2014).  Here, however, there is a wrinkle:  the district court conducted an evidentiary hearing as part of the disposition hearing.  Thus, we draw some additional facts from the court's supportable findings following the evidentiary hearing. See United States v. Caramadre, 807 F.3d 359, 369 (1st Cir. 2015).

On March 31, 2016, local police responded to an unattended death in York, Maine.  Officers determined that the decedent, Kyle Gavin, had been dead for some time and found a substance that contained fentanyl, an empty needle, a metal spoon,

and other drug paraphernalia near his body. The officers then spoke with Gavin's roommates and learned that Gavin, an Army veteran, had met a friend named "Lucas" on the night he died and had given Lucas money.

The officers contacted the federal Drug Enforcement Administration (DEA). The DEA discovered a series of text messages between Gavin and the appellant, sent on the night that Gavin died. Toward the end of this exchange, Gavin indicated that the drugs the appellant had sold him tasted like "sugar." The appellant responded by assuring Gavin that the drugs were "good" and suggesting that the sweet taste came from fentanyl.

The next day, the DEA used Gavin's cellphone to set up a heroin purchase with the appellant and arrested him when he arrived. After waiving his Miranda rights, see Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), the appellant admitted that he had sold a gram of heroin to Gavin on March 30.

Subsequent investigation revealed that the substance trafficked by the appellant contained fentanyl, and the text-message exchange indicated that the appellant was aware of the presence of fentanyl. The appellant admitted that he had procured heroin for Gavin on two or three earlier occasions.

A toxicology report indicated that there were 121 mg/dL of ethanol, 120 mg/dL of methanol, and 5.7 ng/mL of fentanyl in Gavin's system. These revelations were consistent with the report

of the medical examiner, who determined that the cause of Gavin's death was "[a]cute intoxication" from the "combined effects of ethanol, methanol and fentanyl."

In due course, a federal grand jury sitting in the District of Maine charged the appellant with distribution of a substance or mixture containing fentanyl. After some preliminaries, not relevant here, the appellant pleaded guilty to the single count of the indictment. Following receipt of the PSI Report, the district court conducted an evidentiary hearing as a subset of the disposition hearing.

During the evidentiary hearing, Jonathan L. Arden, M.D., testified on the appellant's behalf. Dr. Arden discussed each of the substances found in Gavin's system and their contributions to Gavin's death. His opinion was that ethanol, methanol, and fentanyl "all . . . played a meaningful role" in Gavin's death, that is, all of them were "contributory." But Dr. Arden could not identify any one among the three toxins as "the sole cause" of death. He explained that the levels of both methanol and fentanyl found in Gavin's system independently could be fatal, but there was no reliable way to separate their effects.

After hearing Dr. Arden's testimony, the sentencing court reviewed an array of statutory and guideline provisions. Pertinently, the court pointed out that the government had not charged the appellant under 21 U.S.C. § 841(b)(1)(C) (which carries

- 4 -

a mandatory minimum sentence of twenty years if a defendant distributes a drug and death results). Nor did the government invoke USSG §2D1.1(a)(2) (which sets a higher offense level when "the offense of conviction establishes that death . . . resulted from the use of the substance"). At the government's urging, the court then examined the applicability of USSG §5K2.1 (which authorizes an upward departure "[i]f death resulted" from an offense of conviction). The government argued that strict but-for causation was not a prerequisite for the application of section 5K2.1, while the appellant, citing Burrage v. United States, 134 S. Ct. 881 (2014), insisted that strict but-for causation was needed.

After weighing the evidence, the sentencing court made several factual findings. Importantly, the court found that the appellant had furnished the fentanyl discovered in Gavin's system; that the appellant knew that the substance he gave to Gavin contained fentanyl; and that Gavin's death was caused by the combined effects of the three toxins discovered in his system post-mortem (ethanol, methanol, and fentanyl). The court recognized that the amount of fentanyl in Gavin's system was possibly an independent cause of death, but it found that the government had not proven this fact by a preponderance of the evidence. Similarly, the court recognized that the amount of methanol in Gavin's system might have been an independent cause of death. Once

- 5 -

again, though, the court eschewed any more specific finding regarding the likelihood that methanol was the independent cause of death. Finally, the court determined that although fentanyl was a contributing factor in Gavin's death, it was not a strict but-for cause as it was "impossible to say" whether Gavin would have lived but for the ingestion of fentanyl.

Against the backdrop of these factual findings, the court rejected the appellant's argument that an upward departure under section 5K2.1 demands strict but-for causation. The court concluded instead that the offense conduct only needs to be a meaningful, contributing cause of death. The court proceeded to calculate the guideline sentencing range (GSR), which it found without objection to be eight to fourteen months. The government recommended a sentence of up to ninety-six months, and the appellant argued for a sentence of thirty months.[1] The court advised the parties that it had considered the nature and circumstances of the offense, as well as the appellant's history and characteristics.

This brought matters to a head: finding the GSR "woefully insufficient," the court determined that an upward departure was warranted under section 5K2.1. The court further found that forty-six months was the proper extent of the upward

_____

[1] A thirty-month sentence, though substantially above the GSR, would have been roughly equivalent to time served.

- 6 -

departure and proceeded to impose a sixty-month incarcerative sentence. The court stated explicitly, though, that if an upward departure were deemed inappropriate, it would nonetheless "have given [the same sentence] as an upward variance." In the court's view, the very same factors that supported an upward departure also supported an upward variance.

This timely appeal ensued.

## II. ANALYSIS

Appellate review of claimed sentencing errors involves a "two-step pavane." United States v. Matos-de-Jesús, 856 F.3d 174, 177 (1st Cir. 2017); see United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008). To begin, we examine any allegations of procedural error. See United States v. Flores-Machicote, 706 F.3d 16, 20 (1st Cir. 2013); Martin, 520 F.3d at 92. If the sentence passes procedural muster, we then examine any allegation that it is not substantively reasonable. See Flores-Machicote, 706 F.3d at 20; Martin, 520 F.3d at 92. Here, the appellant assails his sixty-month sentence both procedurally and substantively. We address his claims of error sequentially.

### A.

Before launching our inquiry into the appellant's claims of error, a threshold matter looms. As said, the district court couched its sentence both as an upward departure and as an upward variance. Viewed solely as an upward departure, the validity of

- 7 -

the sentence is a close question. The departure provision relied upon by the district court, USSG §5K2.1, authorizes an upward departure "[i]f death resulted" from the offense conduct. Because a departure can only be imposed pursuant to "the framework set out in the Guidelines," United States v. Rodríguez-Reyes, 925 F.3d 558, 567 (1st Cir.) (quoting United States v. Aponte-Vellón, 754 F.3d 89, 93 (1st Cir. 2014)), cert. denied, 140 S. Ct. 193 (2019), a departure sentence must satisfy whatever criteria the particular departure guideline entails.

Under the departure guideline invoked by the district court, it is necessary to determine the dimensions of the "death resulted" phraseology. In probing those dimensions, we would need to ask what the Sentencing Commission meant when it used that phrase in section 5K2.1. This inquiry would include establishing what standard of causation the Sentencing Commission purposed to require for determining whether death "resulted" from a defendant's conduct. See, e.g., United States v. Rivera-Berríos, 902 F.3d 20, 24-25 (1st Cir. 2018); United States v. Colby, 882 F.3d 267, 271-72 (1st Cir.), cert. denied, 138 S. Ct. 2664 (2018).

The appellant asserts that "death resulted," as used in section 5K2.1, requires strict but-for causation linking the offense conduct to Gavin's death. In support, he points out that the Supreme Court required such a causal link in Burrage with respect to an almost identically worded sentencing enhancement

- 8 -

provision.  To be specific, the Burrage Court held that 21 U.S.C. § 841(b)(1)(C)'s penalty-enhancement provision for death resulting from a distributed drug demands proof of strict but-for causation, that is, proof that the drug was "the straw that broke the camel's back," "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death." 134 S. Ct. at 888, 892.  The government counters that the less stringent type of causation found sufficient in United States v. Pacheco, 489 F.3d 40 (1st Cir. 2007), a pre-Burrage case, is all that is required to trigger a section 5K2.1 departure.  There, we interpreted a "sister" provision of section 5K2.1 (section 5K2.2), which authorizes an upward departure "[i]f significant physical injury resulted" from the offense conduct.  Id. at 46-47.  We concluded that so long as a drug "played a meaningful role" in causing injuries, regardless of whether that drug was the "sole" or "direct" cause of those injuries, an upward departure under section 5K2.2 was permissible.  Id. at 47.

The sentencing court sided with the government. Although it agreed that the government had not proven strict but-for causation, the court nonetheless concluded that Pacheco was "more germane" for present purposes.  Accordingly, the court held that departing under section 5K2.1 was permissible because the drugs distributed by the appellant were a contributing and meaningful cause of Gavin's death.

Whether there is an inherent tension (or even an irreconcilable conflict) between the holdings of Burrage and Pacheco is an interesting question. In the end, however, it presents a conundrum that we need not resolve today. See Privitera v. Curran (In re Curran), 855 F.3d 19, 22 (1st Cir. 2017) (explaining that "courts should not rush to decide unsettled issues when the exigencies of a particular case do not require such definitive measures"). Because the district court made pellucid that it would have imposed the same sixty-month sentence as an upward variance and because (as we explain below) the sentence is fully supportable as an upward variance, we need not inquire into the bona fides of the upward departure. Even if the sentencing court's section 5K2.1 departure was improvident, any error in invoking a departure guideline is harmless where, as here, the district court would have imposed exactly the same sentence by means of a variance. See Aponte-Vellón, 754 F.3d at 93. We turn, then, to whether the sentencing court committed procedural error in relying upon the association between the offense conduct and Gavin's death as a factor in constructing its upwardly variant sentence.

**B**.

A variant sentence, unlike a departure, is not hemmed in by the language of a particular guideline. Instead, it is a product of the sentencing court's weighing of the myriad factors

enumerated in 18 U.S.C. § 3553(a).  See Rodríguez-Reyes, 925 F.3d at 567; Aponte-Vellón, 754 F.3d at 93.  As a general matter, a sentencing court is free to use any relevant factor, reliably proven, as a basis for varying up or down from the guideline range. See Matos-de-Jesús, 856 F.3d at 178; United States v. Díaz-Arroyo, 797 F.3d 125, 130 n.3 (1st Cir. 2015); cf. Koon v. United States, 518 U.S. 81, 106 (1996) (observing that "Congress did not grant federal courts authority to decide what sorts of sentencing considerations are inappropriate in every circumstance").  With this understanding, we focus the lens of our inquiry on whether the challenged sentence, when evaluated as an upward variance, is vulnerable to the appellant's claim of procedural error.

Our review is for abuse of discretion.  The abuse-of-discretion rubric is not monolithic.  Under it, "we afford de novo review to the interpretation and application of the sentencing guidelines, evaluate the sentencing court's factfinding for clear error, and assay its judgment calls for abuse of discretion." United States v. Fernández-Garay, 788 F.3d 1, 3 (1st Cir. 2015). In conducting this tamisage, we remain mindful of the respect that we owe to fact-intensive sentencing determinations.  See Martin, 520 F.3d at 92.  We also remain mindful that a sentencing court should strive to "custom-tailor an appropriate sentence" in every case.  Flores-Machicote, 706 F.3d at 20.

When a sentencing court fashions a sentence that varies from the GSR, the premise for such a variance ordinarily must "be rooted either in the nature and circumstances of the offense or the characteristics of the offender; must add up to a plausible rationale; and must justify a variance of the magnitude in question." Martin, 520 F.3d at 91. This does not mean, though, that everything about a particular offense or offender can be given weight in the sentencing calculus. See, e.g., USSG §5H1.10 (providing that race, sex, national origin, creed, religion, and socioeconomic status "are not relevant" sentencing factors); United States v. Vázquez-Méndez, 915 F.3d 85, 87-88 (1st Cir. 2019) (explaining that a "court may not impose or lengthen a prison sentence [primarily] in order to promote a defendant's rehabilitation"). Other factors may be simply too remote or tangential to warrant inclusion in the sentencing calculus. See United States v. Roberson, 474 F.3d 432, 436 (7th Cir. 2007) (noting that "the factors on which" district court relied were "too attenuated" to justify sentence), abrogated on other grounds by Dean v. United States, 137 S. Ct. 1170 (2017). The possibility of overinclusiveness brings us to the heart of the appellant's procedural plaint. He claims that the court erred by giving weight to Gavin's death in constructing its upwardly variant sentence because the death was not linked to the offense of conviction (the appellant's drug sale) by a strict but-for causal chain. The

- 12 -

appellant suggests that, without proof that the fentanyl-laced substance was the strict but-for cause of the fatality, placing Gavin's demise into the sentencing mix was unreasonable.

This suggestion lacks force. Congress has established that, apart from relevance and reliability, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661; see United States v. Viloria-Sepulveda, 921 F.3d 5, 9 (1st Cir. 2019). The essence of this principle is captured in 18 U.S.C. § 3553(a), which enumerates, albeit in general terms, a broad array of categories of information that may be factored into the sentencing calculus.

Consistent with this principle, sentencing courts have long considered "more than charged conduct in fashioning sentences." United States v. Anonymous Defendant, 629 F.3d 68, 76 (1st Cir. 2010); see United States v. González-Rodríguez, 859 F.3d 134, 138-39 (1st Cir. 2017) (concluding on plain error review that consideration of uncharged criminal conduct was not procedurally unreasonable). Under this umbrella, a sentencing court may give weight to the harm done by the defendant in the course of committing the offense of conviction. See United States v. Lente, 759 F.3d 1149, 1164 (10th Cir. 2014); United States v. Scherrer, 444 F.3d 91, 92-94 (1st Cir. 2006) (en banc); see also Payne v.

- 13 -

Tennessee, 501 U.S. 808, 825 (1991) ("Courts have always taken into consideration the harm done by the defendant in imposing sentence . . . .").

The short of it is that section 3553(a) broadly invites a sentencing court to consider relevant and reliable information concerning the offense of conviction. See, e.g., Matos-de-Jesús, 856 F.3d at 178; Díaz-Arroyo, 797 F.3d at 130 n.3. To this end, the statute specifically directs the court to consider the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Gavin's death was an important part of the manuscript of the crime and, thus, was relevant to the question of punishment. Cf. United States v. Severino-Pacheco, 911 F.3d 14, 17-22 (1st Cir. 2018) (affirming upward variance partially based on dangerousness of defendant's conduct). In addition, the court had before it a surfeit of reliable and relevant information, including (among other things) Gavin's death certificate, the medical examiner's report, Dr. Arden's testimony, and the undisputed facts set out in the PSI Report. This evidence amply chronicled the circumstances of Gavin's death and tied that event to the offense of conviction.

Although the tie fell short of strict but-for causation, no authority prohibits a sentencing court contemplating a variant sentence from using harm as a factor in the absence of such causation. Here, moreover, the causal connection between the appellant's conduct and Gavin's death was far from remote. The

court supportably found as a fact that the fentanyl, either by itself or in combination with the other toxins in Gavin's system, was a contributing cause of Gavin's death. That is to say, the amount of fentanyl could have been independently fatal, and its effect could not be separated from that of the other toxins. Despite the absence of strict but-for causation, the district court — on this record — did not abuse its discretion by considering in its decision to impose an upward variance the fact that Gavin died after using the fentanyl-laced substance knowingly sold to him by the appellant. Consequently, we reject the appellant's claim of procedural error.

## C.

The appellant's remaining contention is that his sixty-month sentence was substantively unreasonable. Specifically, he contends that given the lack of a strict but-for causal connection between his conduct and Gavin's death, imposing a sentence that more than quadrupled the top of the GSR was excessive. In his view, there was no "sound policy reason" for so draconian an upward variance.

Preserved challenges to the substantive reasonableness of a sentence are reviewed for abuse of discretion. See Matos-de-Jesús, 856 F.3d at 179. When performing this review, "we cannot desultorily substitute our judgment for that of the sentencing court." Martin, 520 F.3d at 92. In the last analysis, "[t]here

- 15 -

is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes."  United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011).

We afford "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance."  Martin, 520 F.3d at 92 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  This deference obtains even where, as here, the extent of an upward variance is substantial. See Flores-Machicote, 706 F.3d at 25.  When all is said and done, "[a] sentence is substantively reasonable so long as it rests on a plausible sentencing rationale and exemplifies a defensible result."  United States v. Milán-Rodríguez, 819 F.3d 535, 540 (1st Cir. 2016) (quoting Fernández-Garay, 788 F.3d at 6).

Here, the appellant asserts that his sentence was substantively unreasonable because the evidence was "not sufficient to establish a reliable or accurate link to" Gavin's death.  To the extent that this assertion merely repackages the argument that the court could not consider Gavin's demise as a sentencing factor without strict but-for causation, we already have rejected it.  And as we have pointed out, the sentencing court supportably found that there was a meaningful causal link between the appellant's conduct and Gavin's death.  Absent an abuse of discretion, we must defer to this finding.  See Martin, 520 F.3d

at 92.  Based on the extensive causation evidence before the district court, we discern no abuse of discretion here.

More generally, the sentencing court made plain that the appellant's sentence was not dictated by any single factor but, rather, by a collocation of factors.  The court found, for example, that the GSR did not come close to reflecting the seriousness of the offense because it did not account for Gavin's death.  See 18 U.S.C. § 3553(a)(2)(A); see also United States v. Bollinger, 893 F.3d 1123, 1125-27 (8th Cir. 2018) (concluding that sentence more than ten times top of GSR was substantively reasonable when trafficked heroin resulted in death).  So, too, the court noted that although the appellant did not intend to cause Gavin's death, he was aware that the substance he sold to Gavin contained fentanyl and, thus, he knew he was risking Gavin's life.  Throughout, the court stressed the grave consequences of the appellant's offense: the tragic and premature death of a young veteran and how the appellant's conduct played into the opioid epidemic ravaging the community.

There was more.  "Deterrence is widely recognized as an important factor in the sentencing calculus."  Flores-Machicote, 706 F.3d at 23; see 18 U.S.C. § 3553(a)(2)(B).  Here, the court supportably found that a within-the-range sentence would not serve as an effective deterrent to other drug traffickers tempted to turn a blind eye to the dangers of fentanyl.  In the court's view,

distributing a substance known to contain fentanyl was "extremely dangerous" based on its potency and known lethality.

The sentencing court was correct to view the facts and circumstances of the appellant's case holistically. See Martin, 520 F.3d at 91. Taken collectively, the court's stated sentencing purposes and its findings concerning the nature and circumstances of the offense comprise a sentencing rationale that plausibly supports a substantial upward variance.

By the same token, the sentence achieves a defensible result. At the disposition hearing, the district court emphasized that the drugs the appellant sold to Gavin contained fentanyl; that fentanyl poses an extreme peril to human life; and that the appellant was chargeable with knowledge of this special danger. Because the appellant's conduct knowingly risked Gavin's life and because his fentanyl contributed meaningfully to Gavin's death, the court reasonably concluded that a substantial upward variance was appropriate.

Nor do we regard the extent of the upward variance as exceeding the wide margins of the court's discretion. Even though the upward variance was substantial, both the consequences of the appellant's wrongdoing and the need to deter similar criminal conduct were also substantial. Moreover, the upwardly variant sentence was well below the statutory maximum of twenty years, see 21 U.S.C. § 841(b)(1)(C), and three full years below the ninety-

six months suggested by the prosecutor at sentencing.  Viewing the sixty-month sentence in light of all the facts and circumstances of the case, we discern no abuse of discretion.  The sentence was not outside the universe of reasonable sentencing outcomes.  We hold, therefore, that the sentence was substantively reasonable.

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the challenged sentence is

**Affirmed.**