[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-11248

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHASE MICHAEL GARY,

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:23-cr-00051-MCR-1

————————————

Before LAGOA, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

Chase Michael Gary appeals his 360-month sentence imposed following his guilty plea conviction for distribution of fentanyl resulting in death, 21 U.S.C. § 841(a)(1), (b)(1)(C), 18 U.S.C. § 2. On appeal, Gary argues that his sentence is substantively unreasonable.  After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In December 2022, Gary was arrested by state officials for aggravated assault, possession of a weapon by a convicted felon, discharging a firearm, and possession of a controlled substance.  As he was being arrested, Gary, a fentanyl addict, hid fentanyl pills on his person to prevent their discovery.  Once in jail, he flushed some of the pills down the toilet.  However, he also gave some of the pills to Joshua Gervais, another inmate, because he did not want to get caught with them.  Gary gave the pills to Gervais for free but told Gervais that he might be able to sell them.  Gary warned that the pills were very strong, Gervais could not just give them to anybody.

Gervais gave three of the pills to another inmate, N.H., in exchange for three peanut butter sandwiches.  Gervais also warned N.H. that the pills were potent.  N.H. crushed up one of the pills and inhaled it.  The next morning, Gervais alerted prison officials that N.H. was not breathing.  The officials' life-saving efforts were unsuccessful.  The concentration of fentanyl in N.H.'s blood was lethal; he died of acute fentanyl intoxication.  Gary initially denied

knowledge of N.H.'s death, but after another inmate informed prison officials about what had happened, Gary admitted his role.

Gary and Gervais were charged with knowing and intentionally distributing fentanyl resulting in death and serious bodily injury. Gary entered into a plea agreement and pled guilty. Before sentencing, a probation officer prepared a presentence investigation report ("PSI"), which, along with Gary's sentencing memorandum, detailed Gary's conduct in this case and provided information about his background, some of which we lay out here.

Gary described his childhood as "rocky" and "abusive." Gary and his mother were both subjected to abuse by Gary's stepfather, who was once arrested for child abuse. As a young child, Gary was molested on two occasions—once by an adult couple who had been entrusted to care for him and once by an older child who stayed overnight at his family's home. Beginning when he was eight or nine, Gary began taking drugs that had been prescribed to his grandmother, such as Lortab and Klonopin. Gary's mother had an extensive history of substance abuse and, while a child, Gary witnessed her attempt suicide by overdose and had to revive her with CPR. As a child, Gary was diagnosed with depression, bipolar disorder, dyslexia, ADHD, personality disorder, paranoid schizophrenia, defiant disorder, and conduct disorder. At 20 years old, one of Gary's roommates shot and killed his other roommate due to a dispute over narcotics. Gary's surviving roommate received a life sentence.

Beginning in childhood—and continuing into adulthood—Gary was a regular user of, and later became addicted to, various drugs, including benzodiazepines, opiates, marijuana, LSD, MDMA, heroin, and fentanyl. In the years before this offense, Gary was using up to a gram of heroin or fentanyl per day. He was arrested numerous times, but many of his arrests and convictions were for personal drug use offenses, or for violations of probation stemming from personal drug use. He became homeless, living in his car, and was arrested at least once for stealing food.

Gary faced a mandatory minimum sentence of 20 years imprisonment up to a maximum of life imprisonment. 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). The PSI calculated an advisory guidelines range of 360 months to life imprisonment, based on a total offense level of 37 and a criminal history category of VI. In calculating Gary's criminal history category, the PSI noted that Gary had been convicted in 2014 for petit theft, resisting an officer without violence, and possession of a controlled substance without a prescription. In 2015, Gary was convicted for possession of a controlled substance without a prescription and possession of less than 20 grams of marijuana. In 2022, he was convicted of burglary of an unoccupied conveyance, possession of a controlled substance without prescription, and resisting an officer without violence. That same year he was convicted of possession of a controlled substance without a prescription and petit theft. He next was convicted, in the same year, of aggravated assault with a deadly weapon without intent to kill, possession of a weapon or ammunition by a convicted felon, discharging a firearm from a vehicle, and possession of a

controlled substance without a prescription. Various other convictions, arrests, and offenses were noted in the PSI, but they did not affect Gary's advisory guidelines range.

Neither party objected to the PSI. Gary filed a sentencing memorandum, highlighting the facts described above and seeking a lenient sentence.

At sentencing, Gary, for the first time, objected to one of his criminal history points and the government conceded the issue. With that change, the court calculated Gary's advisory guidelines range to be 324 to 405 months' imprisonment. The court noted that he had read the documents submitted, including a letter from Gary's mother, a victim impact statement, and Gary's sentencing memorandum. Each party then presented argument about what would be an appropriate sentence.

Gary recognized that the case was a tragedy and that there could be no minimization of the fact that N.H. died because and he supplied the fentanyl that killed N.H. He also conceded that his conduct was serious—he explained that fentanyl is dangerous, it has been a recurrent problem in jails, and this was not the first time an inmate died from a fentanyl overdose. He asserted that a 20-year mandatory minimum sentence—or one close to that—would be sufficient to serve the goals of sentencing, and he contended as much for several reasons. First, he noted that he had an extensive mitigating history that led to his addiction to drugs in the first place, including the trauma of recurrent emotional and physical abuse and the sexual violence he experienced as a child. Second, he

contended that his criminal history was "overstated" because that history reflected, primarily, his serious drug addiction and homelessness. Third, he acknowledged his deep remorse for his actions and his willingness to admit his role in N.H.'s death once he realized what had happened. He noted that he had not sought to profit from the pills he brought into prison; he simply made a bad decision about giving them to Gervais rather than throwing them out like the others.

Gary then personally addressed the court and apologized for his "irresponsible decision," and the pain that he caused the victim's family. He reiterated that he was not the person who gave the victim the pills, but took "full responsibility" and admitted that he would have to "live with this for the rest of [his] life." He said he admitted to his acts because he pictured N.H.'s mother and wanted to give her closure.

The government, in turn, argued that the most important factor in determining Gary's sentence was that his actions caused someone's death, and that his sentence should reflect the role he played. It acknowledged that Gary did not intend for N.H. to die, but it argued that Gary was not the least culpable type of defendant that would merit the mandatory minimum. Emphasizing that Gary knew how potent the pills were and the risks, the government asked for a sentence greater than the mandatory minimum.

Having heard from the parties, the court noted that the facts were "devastating" and constituted "a tragedy" that everyone wishes could have been avoided. It explained that it saw Gary's

decision to bring narcotics into a jail as a "huge aggravator" because of the specific problems that drugs cause in the correctional setting. It also noted that Gary knew how dangerous fentanyl was and had even warned Gervais of that danger, which it saw as "very aggravating." Turning to mitigating factors, the court recognized that Gary was "genuinely remorseful" and that he did not intend for N.H. to die. It recognized that Gary had a "horrific" childhood and that he had suffered "from a very young age with drugs" as well as "abuse and trauma" that played a role in his decision-making and led him to prison in the first place. It thus found that Gary's "history and characteristics" were "mitigating but only to a point."

Weighing these mitigating and aggravating factors, the district court stated it would be giving "a severe sentence" of 360 months' imprisonment. It explained that it was doing so for several reasons. First, it needed "to punish" Gary given that someone died because of his decisions. Second, it explained that the sentence should promote respect for the law and provide general deterrence. Applying those principles here, the court explained, meant that it had to deter the "lethal, potent [and] deadly" drug involved in the crime: fentanyl. The court then formally announced the sentence, noting that Gary would also have to serve three years of supervised release upon his release from custody.

In a statement of reasons, filed after sentencing, the district court summarized and reiterated its ruling, stating:

> The Court finds that a sentence of 360 months, which is near the midpoint of the advisory guideline range,

is appropriate in this case.  In imposing this sentence, the Court has considered both aggravating and mitigating factors.  As aggravating factors, the Court has considered the defendant's decision to bring fentanyl into a jail facility, the serious nature and deadly potency of fentanyl of which the defendant was well aware, and most importantly the need to promote respect of the law and provide general deterrence for similar fentanyl offenses.  As mitigating factors, the Court has considered the defendant's sincere remorsefulness, his history of substance abuse, and his horrific upbringing (substance abuse, physical abuse, and sexual abuse).  After considering all of these factors and the totality of the offense which involved a death, the Court finds that a sentence of 360 months custody is sufficient but not greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

Gary's appeal followed.

## II. STANDARDS OF REVIEW

"We review the substantive reasonableness of a sentence for an abuse of discretion."  *United States v. Butler*, 39 F.4th 1349, 1354-55 (11th Cir. 2022).  "In reviewing the reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'"  *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (opinion of E. Carnes, J.)).  A party challenging a sentence

24-11248                Opinion of the Court                9

as unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the [18 U.S.C.] § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

## III. DISCUSSION

On appeal, Gary contends that his sentence is greater than necessary in light of the § 3553(a) factors. He highlights the mitigating facts which he presented to the district court, regarding his upbringing, sexual abuse, untreated mental health conditions, and his addictions. He adds that N.H.'s death was a "horrible" and "unintended tragedy" for which he has extreme remorse, and asserts that, given these facts, the district court placed too much weight on the aggravating factors. He argues that a mandatory minimum sentence—20 years—would have been a reasonable sentence, accomplishing the statutory goals of sentencing. The government contends that Gary's sentence falls within the range of reasonable sentences and should be affirmed. It highlights the aggravating factors and the district court's careful weighing of the mitigating factors as evidence that there was no abuse of discretion.

Under § 3553(a), a sentencing court must impose a sentence that is "sufficient, but not greater than necessary . . . to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense, . . . to afford adequate deterrence," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The court also must consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* §§ 3553(a)(1), (6).

While advisory, the Sentencing Guidelines are the starting point that a sentencing court must consider. *See Gall v. United States*, 552 U.S. 38, 49 (2007). Given their important role, "we ordinarily expect sentences within the advisory guidelines range to be reasonable." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009). A sentence "well below the statutory maximum" is another indicator of reasonableness. *United States v. Riley*, 995 F.3d 1272, 1278 (11th Cir. 2021) (quoting *United States v. Stanley*, 739 F.3d 633, 656 (11th Cir. 2014)).

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider

th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). "Rather, a district court's acknowledgment that it has considered the §3553(a) factors and the parties' arguments is sufficient." *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)).

Gary has not shown that his sentence is substantively unreasonable. Gary's 360-month sentence was within the guidelines range and "well below" the statutory maximum sentence of life—circumstances that indicate reasonableness. *See Riley*, 995 F.3d at 1278; *Sarras*, 75 F.3d at 1120. The district court acknowledged that 360 months was a "severe" sentence, but it provided a thorough explanation for why the sentence was appropriate, referencing applicable § 3553(a) factors. *Butler*, 39 F.4th at 1355. It explained that there were highly relevant aggravating circumstances—Gary's conduct led to the death of another and involved fentanyl, an incredibly dangerous substance. *Cf. United States v. Heindenstrom*, 946 F.3d 57, 66 (1st Cir. 2019) (upholding a sentence where district court emphasized "that fentanyl poses an extreme peril to human life[,] and that the [defendant] was chargeable with knowledge of this special danger"). The court did not err in relying on these extremely aggravating factors, and it had the necessary discretion to weigh those relevant factors and attach significant weight to them. *Butler*, 39 F.4th at 1355. As it did with the aggravating evidence, the district court thoroughly discussed the mitigating evidence, including Gary's childhood trauma and his extensive history of drug

addition, as heartbreaking and contributing factors to Gary's offense. *See id.*; *Sarras*, 575 F.3d at 1219.

Having recognized aggravating and mitigating factors, the district court carefully parsed the relevant mitigating evidence and weighed it against the relevant aggravating evidence. The court's discussion shows that it considered all relevant factors, did not give significant weight to a factor that was not relevant, and did not commit a clear error of judgment in weighing those factors. *See Butler*, 39 F.4th at 1356; *Irey*, 612 F.3d at 1189.

In the end, the district court grounded its decision in the applicable § 3553(a) factors and acted within its discretion in imposing a guidelines sentence. Therefore, Gary has not shown that his sentence is unreasonable. *See Irey*, 612 F.3d at 1189 (explaining that the abuse of discretion standard "allows for a range of choice for the district court, so long as that choice does not constitute a clear error of judgment" (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (*en banc*))); *id.* at 1191 ("A district court's sentence need not be the most appropriate one, it need only be a reasonable one."); *see also United States v. Boone*, 97 F.4th 1331, 1343 (11th Cir. 2024) (upholding a sentence as reasonable where, among other things, "the district court conducted an individualized assessment of the facts, balanced the competing considerations . . . and ultimately determined that a guidelines sentence . . . was necessary and warranted by the specific facts of th[e] case").

## IV. CONCLUSION

Our review of the substantive reasonableness of a sentence is deferential, and we ask only whether the sentence given was "in the ballpark of permissible outcomes." *Butler*, 39 F.4th at 1355. We are not unsympathetic to the horrific circumstances Gary has faced and we do not understate the mitigating nature of his personal history. 18 U.S.C. § 3553(a); *cf. Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) ("[E]vidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse." (quoting *California v. Brown*, 479 U.S. 538, 545 (1987) (O'Connor, J., concurring))). Recognizing the district court's careful consideration of those facts and the serious aggravating circumstances also present here, the district court did not abuse its discretion or render a substantively unreasonable sentence. We, therefore, affirm.

**AFFIRMED.**